UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| TIMOTHY W. ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 5:22-CV-267-REW-CJS |
| v. | ) | |
| | ) | ORDER |
| KEVIN MAZZA, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

*** *** *** ***

On or about August 24, 2022, *pro se* Petitioner Timothy W. Robinson filed a petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. *See* DE 1 (Petition). On referral, and as a matter of preliminary review, United States Magistrate Judge Candace J. Smith recommended that the undersigned dismiss Robinson's petition as untimely and deny a certificate of appealability. *See* DE 26 (Recommended Disposition). Currently before the Court is Robinson's objection to Judge Smith's recommendation. *See* DE 28. The Court also considers Robinson's supplemental filing(s).[1] *See* DE 27.

**I.   Relevant Background**

In April 2014, following a three-day trial, Robinson was found guilty of one count of first-degree sodomy (victim less than twelve years old), one count of incest (victim less than twelve years old), and one count of use of a minor in a sexual performance (victim less than twelve years

---

[1] Robinson moved to supplement his petition on May 18, 2023. *See* DE 27. The Court granted the request and deems the supplement applicable, in considering the scope of claims Robinson pursues. *See* DE 30. The Court notes that because Robinson's motion to supplement was not docketed until May 23, 2023—one day after Judge Smith's recommendation—Judge Smith did not consider the DE 27 arguments. Robinson has serially submitted letters and status requests, which the Court has also taken into consideration in this Order, to the extent any pertain to the analysis.

1

old). *See Robinson v. Commonwealth*, No. 2020-CA-1576-MR, 2022 WL 2542058, at *1 (Ky. Ct. App. July 8, 2022) (*Robinson I*). At the time of that prosecution, he was already incarcerated on a 20-year term for an incest conviction involving his step-daughter, unrelated to the current conviction subject matter. *See* DE 21 at 33. In accordance with the jury's recommendation in the instant case, which involved Defendant's son, Z.R., Robinson was sentenced to life imprisonment for sodomy, fifty years' imprisonment for incest, and twenty years' imprisonment for use of a minor in a sexual performance. *See id.* Robinson appealed his conviction and sentence, which the Kentucky Supreme Court affirmed. *See Robinson v. Commonwealth*, No. 2014-SC-467-MR, 2015 WL 4979794, at *8 (Ky. Aug. 20, 2015) (*Robinson II*). Robinson then filed a Rule 11.42 motion, raising four claims related to ineffective assistance of counsel, which was also denied. *Robinson v. Commonwealth*, No. 2017-CA-000883-MR, 2019 WL1422565, at *1 (Ky. Ct. App. Mar. 29, 2019) (*Robinson III*). Robinson appealed, and the Kentucky Court of Appeals affirmed denial of his first three claims but remanded the fourth on the basis that the Lincoln Circuit Court "erred in denying Robinson's motion for an evidentiary hearing" because "[n]othing contained in the record conclusively proves or disproves Robinson's allegation that trial counsel failed to inform him of the possibility he could be sentenced to life in prison[.]" *Id.* at *3.

In November 2020, on remand, the Lincoln Circuit Court held an evidentiary hearing and again denied the Rule 11.42 motion. *See Robinson I*, 2022 WL 2542058, at *3. On appeal, the Kentucky Court of Appeals affirmed the denial. *See id.* In August 2022, Robinson filed a motion in the Kentucky Supreme Court to proceed *in forma pauperis*. *See Robinson v. Commonwealth*, No. 2022-SC-0337 (Ky. Aug. 11, 2022). Construing the filing as a motion for extension of time to file a motion for discretionary review, the court dismissed Robinson's motion on September 28, 2022, based on failure to cure deficiencies by the ordered deadline. *See id.*

On August 24, 2022, Robinson filed the instant § 2254 petition in the Western District of Kentucky.[2]  *See* DE 1.  The Western District transferred the case to this Court per 28 U.S.C. § 1404(a) and Local Rule 3.2(b).  *See* DE 6.  In the petition, Robinson raises several claims, including that his trial was improperly joined to his co-defendant's, that his trial counsel was ineffective, and that irrelevant "bad acts" were introduced at trial.  *See* DE 1 at 5–10.  Judge Smith, at the gate, perceived a plain concern regarding timeliness.  While Robinson's petition did not address its timeliness, *see id.* at 15–16, in April 2023, he filed a document titled "Memorandum in Support of Petition for Writ of Habeas Corpus[,]" arguing that his petition is timely due to equitable tolling and via gateway principles of actual innocence. *See* DE 21 at 41.  On May 22, 2023, Judge Smith recommended that the Court dismiss Robinson's petition as untimely.  *See* DE 26 at 26.

Robinson objects in part to Judge Smith's recommendation.  *See* DE 28; DE 31 (memo).  The matter is ripe for ruling.  Judge Smith was quite correct in her detailed treatment.  Robinson's objections fail to displace her analysis, and the Court adopts the recommendation, dismissing the § 2254 as untimely.  The Court also denies a COA.

## II.    Robinson's Objection to Judge Smith's Recommendation

### a. Legal Framework

The Court reviews Judge Smith's recommendation de novo, to the extent Robinson makes a specific objection.  *See* 28 U.S.C. § 636(b)(1)(C) (requiring "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made").  However, the Court need not conduct "review of a magistrate[] [judge's] factual or legal

---

[2] When Robinson filed the § 2254 petition, he indicated that he had two motions—a Rule 60.02 motion and a Rule 11.42 motion—pending before the Lincoln Circuit Court.  *See* DE 1 at 12–14.  Both motions were denied on January 4, 2023.  *See Robinson v. Commonwealth*, 2023-CA-0349 (Ky. Ct. App. Mar. 30, 2023).  On appeal, the Kentucky Court of Appeals denied the motions as untimely.  *See id.*

conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985).  The Court tailors its analysis accordingly.

Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant an application for a writ of habeas corpus only if the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *accord Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).  Notably, AEDPA established a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (per curiam) (quoting *Lindh v. Murphy*, 117 S. Ct. 2059, 2066 n.7 (1997)).  AEDPA's standard is, by design, "difficult to meet." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013)).  The Supreme Court has cautioned courts about the rarity of a warranted writ under § 2254. *See, e.g.*, *Jenkins v. Hutton*, 137 S. Ct. 1769, 1773 (2017) (per curiam).  Typically, the petitioner bears the heavy burden of justifying habeas relief. *See Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009).

Timeliness is a significant hurdle.  Generally, under AEDPA, a petitioner has one year to file a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2244(d).  The one-year limitations period begins to run from the latest of the following:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

4

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1). Here, Judge Smith determined that subsection (A) governs the statutory analysis. *See* DE 26 at 8. Per Judge Smith's analysis, Robinson's judgment became final on November 18, 2015 (thus, initiating AEDPA's one-year clock), ninety days after the Kentucky Supreme Court affirmed his conviction and sentence. *See id.* at 8–10 (referencing *Robinson II*, 2015 WL 4979794); *see also* 28 U.S.C. § 2244(d)(1)(A). Finding that AEDPA's one-year limitations period ended on November 18, 2016, Judge Smith concluded that Robinson's petition—filed on August 22, 2022—was untimely. *See* DE 26 at 10. Judge Smith further concluded that none of statutory tolling, equitable tolling, or the *Schlup*[3] actual innocence gateway saved Robinson's petition.[4] *See id.* at 10–11, 20, 24–25.

  First, the Court notes that Robinson does not object on the statutory tolling or, with any specificity, on the actual innocence analyses. As such, the Court adopts Judge Smith's determinations and findings.[5]

---

[3] *Schlup v. Delo*, 115 S. Ct. 851 (1995).
[4] Judge Smith did conclude that when Robinson filed his first Rule 11.42 motion on August 8, 2016, this statutorily tolled the limitations period. *See* DE 26 at 11. However, the period began to run again on January 12, 2017, and ran uninterrupted until it expired on April 24, 2017. *See Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000) (concluding that, in the context of § 2244(d)'s statute of limitations period, that "the day of the act, event, or default from which the designated period of time begins to run shall not be included.") (quoting FED. R. CIV. P. 6(a)) (internal quotation marks omitted).
[5] Robinson's *pro se* status warrants more lenient construction of his filings. *See Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed….") (internal citations omitted). However, that status does not exempt him from operation of the rules, including those that define the duty to and failure to object to a Magistrate Judge's recommendation concerning disposition of a habeas petition. *See Littlepage v. Barrett*, No. 1:20-CV-800, 2021 WL 5275721, at *2 (S.D. Ohio Nov. 12, 2021) ("At the same time, pro se litigants must still comply with the procedural rules that govern civil cases.") (citing *McNeil v. United States*, 113 S. Ct. 1980, 1984 (1993)).

As to statutory tolling, the key window is between the trial court's initial 11.42 denial (in December of 2016) and Robinson's delayed appeal (which did not happen until May of 2017). He describes and confirms that chronology himself in DE 28 at 15. An 11.42 motion tolls *only* while a "properly filed application for State post-conviction . . . review with respect to the pertinent judgment or claim is pending[.]" § 2244(d)(2). As Judge Smith found, when the 11.42 appeal time lapsed by rule on the December 2016 order, Robinson's habeas clock again began to run. By late April of 2017, the full year had expired, closing the § 2254 door as a matter of statutory timeliness. Although Kentucky ultimately accepted the late appeal and visited the merits, plain Sixth Circuit law recognizes that such a sequence does not reopen or retroactively adjust a spent clock. Judge Smith rightly deemed § 2244(d)(1)(A) as barring the petition. *See* DE 26 at 14–16. She expertly marshaled the law in this area. *See Edmonds v. White*, No. 17-5759, 2018 WL 3244014, at *2 (6th Cir. Feb. 1, 2018) ("Because Edmonds did not properly file his post-conviction petition with the Kentucky Court of Appeals—even though the state appellate court ultimately considered his motion—he was not entitled to statutory tolling while the state court reviewed his untimely appeal."); *Allen v. Adams*, No. 20-6204, 2021 WL 1561468, at *2 (6th Cir. Apr. 6, 2021) ("An untimely appeal from the denial of a post-conviction petition is not considered to be a 'properly filed' application for post-conviction review under § 2244(d)(2), and it does not toll or revive the limitations period.") (citing *Allen v. Siebert*, 552 U.S. 3, 7 (2007); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003); *Al Kini v. Ferguson*, No. 3:21-CV-P486-DJH, 2022 WL 433163, at *2 (W.D. Ky. Feb. 11, 2022) (addressing gap between untimely appeal and allowed, belated appeal: "Therefore, the Court presumes that the Kentucky Court of Appeals permitted Al Kini to file a belated appeal. However, "'[b]ecause [Al Kini] did not properly file his post-conviction petition with the Kentucky Court of Appeals—even though the state appellate court

ultimately considered his motion—he was not entitled to statutory tolling while the state court reviewed his untimely appeal.'. . . Therefore, the statute of limitations was not tolled during the time in which Al Kini was pursuing his belated appeal.") (quoting and relying on *Edmonds*, with brackets from *Al Kini* decision).

Robinson does not criticize, object to, or in any way grapple with this key vulnerability in case timeliness.  *See, e.g.*, DE 32 (providing timeline that glosses over 2017 period when appeal window closed and no appeal filed).  The case is time-barred under § 2244(d).

### b. Equitable tolling and *Schlup*

Robinson objects to Judge Smith's conclusion that he is not entitled to equitable tolling of AEDPA's one-year limitations period.  *See* DE 28 at 14.  Though Robinson's petition initially did not address equitable tolling, s*ee* DE 1 at 15–16, he advances that argument in a memorandum in support of the petition, *see* DE 21.  There, Robinson alleges "Petitioner's habeas corpus petition is not time-barred. Petitioner, Timothy W. Robinson has proved herein, gross attorney malfeasance."  *Id.* at 41.

Judge Smith concluded that "Robinson has not alleged that he was prevented from timely filing his § 2254 Petition due to some misconduct by his counsel over which he had no control[,]" a requisite component of equitable tolling.  DE 26 at 19.  Because the allegedly deficient performance occurred in July 2014, and Robinson's federal limitations period expired many years later, Judge Smith determined that Robinson failed to demonstrate that his trial lawyer's conduct impacted his ability to meet AEDPA's time-limit.  *See id.* at 19–20.

Though Robinson's objection pertains to equitable tolling, it concerns neither Judge Smith's analysis nor his trial attorney's allegedly deficient performance.  Instead, Robinson pivots to contend that he is entitled to equitable tolling because he is unfamiliar with the applicable law

7

and relied on a fellow inmate when filing the underlying § 2254 petition. *See* DE 28 at 17–18 ("I don't know the Court statutes, [r]ules, or [l]aws.  Inmates in prison will tell you anything to get you to think they know what to do with your case.  If I knew, I would of ask for tolling of time."). Per Robinson, "all I had faith in besides 'God' was inmate Scot Gaither."  DE 28 at 9; 15 ("This is on . . . Scot Gaither, who I trusted to help me[.]").  Robinson excuses his tardiness as follows: "Scot Gaither plainly told me, from what he figured up, I had until Jan 2023 to file my federal habeas corpus."  *Id.* at 9.  Typically, a petitioner cannot "raise at the district court stage new arguments or issues that were not presented" before a magistrate judge's recommendation.  *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("[W]hile the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.").  "Although *pro se* pleadings and filings are held to less stringent standards than those drafted by lawyers, *pro se* litigants are not entirely exempt from the requirements of the Federal Rules of Civil Procedure."  *Hill v. Dept. of Veteran Affairs*, No. 3:22-CV-246, 2023 WL 1301997, at *1 (M.D. Tenn. Mar. 1, 2023) (internal citations omitted); *McNeil*, 113 S. Ct. at 1984  ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, and have held that some procedural rules must give way because of the unique circumstance of incarceration, we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") (internal citations omitted).

Still, given that the recommended disposition considered the timeliness of Robinson's motion *sua sponte,* and as a screening exercise, and Judge Smith rightly indicated that the objection period would allow Robinson "to present his position on the timeliness issue[,]" the Court

considers the merits of Robinson's arguments.  DE 26 at 1 n.1.  The equitable tolling doctrine "allows courts to toll a statute of limitations when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Hall v. Warden*, 662 F.3d 745, 749 (6th Cir. 2011).  "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005)).

Here, Robinson fails to demonstrate an extraordinary circumstance.  To the extent Robinson argues that he lacks knowledge of the law, "[i]t is well-settled that ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991) (citing *School Dist. Of the City of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981); *Akron Presform Mold Co. v. McNeil Corp.*, 496 F.2d 230, 234 (6th Cir. 1974)).  Further, while Robinson may have involved another inmate in the pursuit of his § 2254 petition, Robinson does not claim that something out of his control prevented timely filing.  The Sixth Circuit has held that a petitioner's reliance on incorrect advice from his or her *attorney* does not constitute an extraordinary circumstance for equitable tolling.  *See Jurado v. Burt*, 337 F.3d 638, 644–45 (6th Cir. 2003).  Thus, reliance on advice from a fellow inmate even more clearly cannot serve as grounds for equitable tolling.

Mistakes in deadline calculation do not establish equitable tolling.  About this, the Sixth Circuit is clear.  Thus, "pro se status, lack of legal resources, and ignorance of the law do not constitute extraordinary circumstances warranting equitable tolling." *Perkins v. Schiebner*, No. 23-1973, 2024 WL 1883931, at *2 (6th Cir. Apr. 16, 2024).  Further, a represented party that misses a limitations period through attorney negligence gets no relief via equitable tolling.  *Wershe*

9

*v. City of Detroit, Michigan*, 112 F.4th 357, 367 (6th Cir. 2024) (noting the doctrine's requirement of "extraordinary" misconduct, such as ignored communications, refused instructions, or refusal to respond, as contrasted with "garden variety" negligence: "While it is possible that Wershe's attorneys were negligent, any such attorney negligence is not grounds for equitable tolling."). Here, Robinson had no counsel, and it was strictly up to him to police the deadlines. *See United States v. Vann*, No. 21-7057, 2022 WL 7366286, at *3 (10th Cir. Oct. 13, 2022) ("We further note that Mr. Vann's reliance on jailhouse lawyers after Mr. Hembree's resignation is inadequate to justify equitable tolling.") (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("The fact that an inmate law clerk was assisting in drafting the ... petition does not relieve [the defendant] from the personal responsibility of complying with the law.")).

To hear Robinson tell it, he relied fully on the lay Gaither to determine timeliness. Gaither's letters suggest much less formality, precision, and involvement in the history. Indeed, Gaither, in the letters, chides Robinson for lack of information, "You always kept me in the dark on everything[.]" DE 28-2 at 1. Further, Gaither mentions the casual role he had: "I didn't actually calculate your time, that was just what I thought by just glancing at the dates." *Id.* at 4. Robinson, who would not be able to claim equitable tolling through a negligent lawyer, clearly cannot rest on the musings of a non-lawyer provided after casual review. *See Allison v. Smith*, No. 2:14–cv–10423, 2014 WL 2217238, at *5 (E.D. Mich. May 29, 2014) (noting that bad advice from a fellow inmate or other non-lawyer does not constitute grounds for equitable tolling of the statute of limitations). As the litigant representing himself, Robinson had a duty to ensure timeliness. A regular filer across many courts, Robinson's timely filing was a matter within his control. Equitable tolling does not pertain.

In the original memo, and in the objection, Robinson references actual innocence, another rare saving mechanism. This is an effort to get procedural relief through the *Schlup* gateway. Judge Smith carefully applied the standard as to Robinson's proposed new evidence, a 2019 affidavit by which one of Robinson's other children recants or makes exculpatory remarks.

The Court assessed and agrees with Judge Smith's conclusion that Robinson has not "shown that he is entitled to an equitable exception to the one-year limitation period . . . because he is actually innocent." DE 26 at 24–25. Showing "actual innocence" requires that Robinson present "new reliable evidence" of factual innocence. *Schlup*, 115 S. Ct. at 853. Though Robinson filed an affidavit from one of his children stating that the allegations against Robinson and his co-defendants were false, *see* DE 22-1, the Court does not view this as sufficiently reliable to "prove[]" that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (internal quotation marks omitted) (quoting *Schlup*, 115 S. Ct. at 854); *see also Dobbert v. Wainright*, 105 S. Ct. 34, 36 (1984) (Brennan, J., dissenting from denial of certiorari) ("Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction."); *Parker v. Bauman*, No. 5:10-CV-14304, 2012 WL 2223986, at *7–8 (E.D. Mich. June 15, 2012) ("Skepticism about recantations is especially applicable in cases of child sexual abuse, where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story.").

Robinson made no particular objection to Judge Smith's treatment, and she surely worked the rubric correctly. Judge Smith noted institutional doubts regarding recantation, in contexts of this type. Further, she critiqued particularly the affidavit at issue, including obvious questions on its timing, origination, and content. Finally, and as fatal to any relief, Judge Smith contrasted the new evidence with the adjudicated record in Robinson's case. This included granular reference to the appellate decisions, which rehearsed the record of Robinson's victimization of his son, Z.R. The new proof does not implicate, directly or in any first-hand or eyewitness way, the victim's testimony. *See Robinson II*, 2015 WL 4979794, at *3 (summarizing specific proof, including from another child in house: "We believe that the fact that two child witnesses testified that Appellant had anally raped them—and the fact Appellant served as a father figure to both of them—is enough to account for the jury's recommended sentence without accounting for any alleged prejudice."); *Robinson III*, 2019 WL 1422565, at *1 (" Following a three-day jury trial, during which Z.R. gave detailed testimony about the acts Robinson had committed against him, Robinson was found guilty on all charges."). Judge Smith accounted for the full record, in this context, in reaching her assessment.[6]

Given the proof summarized, Judge Smith rejected the *Schlup* showing. She applied the correct standards, and Robinson, long on hyperbole and demands, but very scant on his non-particular objections, does not place Judge Smith's findings at issue. Indeed, his only real invocation as to actual innocence is a § 1983 case he filed before Judge Caldwell in 2015. She screened and dismissed that filing, in case 15-313, and nothing about that separate suit impacts the

---

[6] And as she noted, the affidavit, hearsay laden as it is, was not from either of the central witnesses. Further, the state court also considered the affidavit in the post-conviction context and characterized it as "not one of material significance." *See* DE 26 at 24 (quoting trial court in context of CR 60.02 ruling).

12

*Schlup* discussion authored here by Judge Smith. The Court accepts and adopts the careful assessments of the Magistrate Judge.

The Court notes that it also considered Robinson's supplemental filing. *See* DE 27 at 1. There, Robinson argues that the trial court abused its discretion by not applying the double jeopardy clause. *See* DE 27 at 1. The argument does not change the outcome, as it has no bearing on the timeliness of the instant petition. The Court also considered any of Robinson's other myriad post-recommendation filings, to the extent any referenced the timeliness inquiry.

### III. Conclusion

Accordingly, the Court **OVERRULES** Robinson's objection at DE 28, **ADOPTS** DE 26, **DENIES** Robinson's § 2254 petition, and further **DENIES** a certificate of appealability.[7] From the applicable record, it plainly appears that the petition is untimely and that Robinson is not entitled to relief in this court. A Judgment to this effect follows.

This the 29th day of October, 2024.



Signed By:
*Robert E. Wier*
**United States District Judge**

---

[7] The Court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hurick v. Woods*, 672 F. App'x 520, 523 (6th Cir. 2016). To satisfy this standard, the petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.* (citing Miller–El v. Cockrell, 123 S. Ct. 1029, 1024 (2003)). When a court denies a petition on procedural grounds, the petitioner must also show that the same reasonable jurist would find the court's procedural ruling debatable. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000). The record leaves nothing for a reasonable jurist to dispute on either prong. Robinson failed to persuade the Court—as is his burden—that he is entitled to tolling as an equitable matter or as an actual innocence matter. That ruling is not debatable. As demonstrated, it comports fully with Sixth Circuit precedent, aptly accounts for the full evidentiary record, and leaves nothing for further inquiry on appeal. The other bases in Judge Smith's ruling drew no objection, foreclosing additional review.